# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 19-1943V**
UNPUBLISHED

JESSICA J. HEIN,

Petitioner,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent.

Chief Special Master Corcoran

Filed: September 14, 2021

Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Tetanus, Diphtheria, acellular Pertussis ((Tdap) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA)

*Richard H. Moeller, Moore, Heffernan, et al., Sioux City, IA, for Petitioner.*

*Mollie Danielle Gorney, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On December 23, 2019, Jessica J. Hein filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a right shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, after receiving the influenza ("Tdap") vaccine on July 3, 2018. Petition at 1-2, ¶ 4. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). Although Respondent conceded Ms. Hein's entitlement to a damages award, the parties could not agree on the amount to be awarded.

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, I find that Petitioner is entitled to an award of damages in the amount **$94,263.28, reflecting $93,000.00 for her past pain and suffering plus $1,263.28 for her past unreimbursed medical expenses.**

## I. Relevant Procedural History

Along with the Petition, Ms. Hein filed her affidavit and some of the medical records required by the Vaccine Act. Exhibits 1-14, ECF No. 1; *see* Section 11(c). Over the subsequent eleven-month period, Petitioner filed the remainder of the required medical records. Exhibits 15-19. ECF Nos. 5, 11,13, 18, 23.

On April 15, 2021, Respondent filed his Rule 4(c) Report, conceding Petitioner was entitled to compensation for her SIRVA, and I issued a Ruling on Entitlement a few days later. ECF Nos. 27-28. For three months, the parties attempted to informally resolve the issue of damages. *See, e.g.,* Status Report, June 21, 2021, ECF No. 33. On July 15, 2021, they filed a joint status report indicating they had reached an impasse in their damages discussions and requesting that I set a briefing schedule. ECF No. 34.

The parties filed their briefs on September 7, 2021. Petitioner's Damages Brief ("Brief"), ECF No. 36; Respondent's Memorandum on Damages ("Opp."), ECF No. 35. During informal email communications, the parties agreed to forego filing any reply briefs. *See* Informal Remark, dated Sept. 8, 2021. The issue is now ripe for adjudication.

## II. Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a

mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[3] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. In *Graves*, Judge Merow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. *Graves v. Sec'y of Health & Human Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). Judge Merow maintained that do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, Judge Merow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id*. at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

[3] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

## III. Prior SIRVA Compensation Within SPU[4]

### A. Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of July 1, 2021, 2,097 SPU SIRVA cases have resolved since the inception of SPU on July 1, 2014. Compensation was awarded in 2,036 of these cases, with the remaining 61 cases dismissed.

Of the compensated SPU SIRVA cases, 1,187 cases involved a prior ruling that petitioner was entitled to compensation. In only 69 of these cases was the amount of damages determined by a special master in a reasoned decision. As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable precedent setting forth what similarly-situated claimants should also receive.[5]

1,093 of this subset of post-entitlement determination, compensation-awarding cases, were the product of informal settlement - cases via proffer and 25 cases via stipulation. Although all proposed amounts denote an agreement reached by the parties, those presented by stipulation derive more from compromise than any formal agreement or acknowledgment by Respondent that the settlement sum itself is a fair measure of damages. Of course, even though *any* such informally-resolved case must still be approved by a special master, these determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits,* 2020 WL 3729420, at *4 (emphasis in original).

The remaining 849 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Due to the complexity of these settlement discussions, many which involve multiple competing factors, these awards do

[4] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[5] *See, e.g., Sakovits v. Sec'y of Health & Human Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

The data for all groups described above reflect the expected differences in outcome, summarized as follows:

| | Damages Decisions by Special Master | Proffered Damages | Stipulated Damages | Stipulated[6] Agreement |
|---|---|---|---|---|
| **Total Cases** | *69* | *1,093* | *25* | *849* |
| **Lowest** | $40,757.91 | $25,000.00 | $45,000.00 | $5,000.00 |
| **1st Quartile** | $75,000.00 | $70,000.00 | $90,000.00 | $45,000.00 |
| **Median** | **$97,500.00** | **$90,100.00** | **$115,772.83** | **$65,000.00** |
| **3rd Quartile** | $125,360.00 | $119,381.38 | $160,502.39 | $90,000.00 |
| **Largest** | $265,034.87 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

### B. Pain and Suffering Awards in Reasoned Decisions

In the 69 SPU SIRVA cases which required a reasoned damages decision, compensation for a petitioner's actual or past pain and suffering varied from $40,000.00 to $210,000.00, with $95,500.00 as the median amount. Only five of these cases involved an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,000.00.[7]

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment of 40 days to over six months. In cases with more significant initial pain, petitioners experienced this greater pain for three months or less. All petitioners displayed only mild to moderate limitations in range of motion, and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). None required surgery. The duration of the injury ranged from six to 29 months, with petitioners averaging approximately nine months of pain.

---

[6] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

[7] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Human Servs*., No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

Although some petitioners asserted residual pain, the prognosis in these cases was positive.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 95 PT sessions over a duration of more than two years and multiple cortisone injections, was required in these cases. In four cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering. In the fourth case involving an award of future pain and suffering, the petitioner provided evidence of an ongoing SIRVA expected to resolve within the subsequent year.

## IV. Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole to include the medical records and affidavits filed and all assertions made by the parties in written documents. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

### A. The Parties' Arguments

The parties agree Petitioner should be awarded $1,263.28 for her unreimbursed medical expenses. Brief at 9; Opp. at 4. Thus, the only area of disagreement is regarding the amount of compensation which should be awarded for Petitioner's pain and suffering.

Emphasizing the duration and severity of her symptoms, as well as the fact that she was seven months pregnant at the time of vaccination, Petitioner requests $95,000.00 for her actual pain and suffering. Brief at 9. She notes that she reported pain which reached a maximum level of six out of ten approximately two years post-vaccination. *Id.* at 5-6. Arguing that any gaps in treatment were "largely due to the demands of giving birth to her son and caring for a newborn baby and toddler" (*id.* at 8),

Petitioner criticizes Respondent for what she characterizes as an overreliance upon the amount of formal treatment and volume of medical records in a case (*id.* at 9).

Petitioner compares the facts and circumstances of her case favorably with those experienced by the petitioner in *Accetta*,[8] who was awarded $95,000.00 for her pain and suffering. Additionally, she argues that she faced the same limitations as the *Desrosier*[9] petitioner, who was also pregnant at the time of her injury.

In reaction, Respondent asserts Petitioner should be awarded only $75,000.00 for her pain and suffering. Opp. at 1, 9. Because Petitioner did not specify that the amount she seeks is for past pain and suffering only, Respondent included a brief discussion as to why a future award is not warranted in this case. *Id.* at 8-9.

As the bases for the amount he proposes, Respondent cites the following cases which he maintains are comparable: *Kim, George,* and *Gentile,*[10] in which the petitioners received $75,000.00, $67,000.00, and $85,000.00, respectively. Opp. at 5-8. Noting similarities with the circumstances experienced by the *Kim* petitioner - a similar amount of PT and difficulties caring for her newborn child - Respondent argues any differences are countervailing. He maintains that the multiple injections required to treat Petitioner's right shoulder pain are offset by the more sustained period of initial severe pain experienced by the *Kim* petitioner. Thus, he asserts Petitioner's pain and suffering award should be equivalent to what was awarded in *Kim. Id.* at 6.

When discussing the facts and circumstances of the *George* case, Respondent stresses similar countervailing factors. Opp. at 7. However, he does not argue that Petitioner's award should be as low as what was awarded in *George.* Regarding *Gentile,* Respondent argues that the duration of the sequela suffered by the *Gentile* petitioner was longer. *Id.* at 7-8.

---

8 *Accetta v. Sec'y of Health & Human Servs.*, No. 17-1731V, 2021 WL 1718202 (Fed. Cl. Spec. Mstr. Mar. 31, 2021).

9 *Desrosiers v. Sec'y Health & Human Servs*., No. 16-0224V, 2017 WL 5507804 (Fed. Cl. Spec. Mstr. Sept. 19, 2017) (awarding $85,000.00 for pain and suffering).

10 *Kim v. Sec'y Health & Human Servs*., No. 17-0418V, 2018 WL 3991022 (Fed. Cl. Spec. Mstr. July 20, 2018); *George v. Sec'y of Health & Human Servs*., No. 18-0426V, 2020 WL 4692451 (Fed. Cl. Spec. Mstr. July 13, 2020); *Gentile v. Sec'y Health & Human Servs*., No. 16-0980V, 2020 WL 3618909 (Fed. Cl. Spec. Mstr. June 5, 2020) (ruling setting amount to be awarded in final decision).

### B. Analysis

A thorough review of the medical records reveals that Petitioner suffered an injury that spanned at least 27 months with pains levels that fluctuated throughout that time. Petitioner's right shoulder pain began as severe for one month; abated for three to four months; returned to a moderate level for at least five months; fluctuated slightly thereafter until it decreased to a level of one out of ten[11] approximately 14 months post-vaccination; and remained at that mild level until four months later when it increased to five then four - especially with movement. Petitioner's symptoms were treated by three injections and two sets of PT, each time consisting of five sessions during a month-long period. Seven months pregnant at the time of vaccination, Petitioner's circumstances were exacerbated by the need to care for her newborn son, born approximately two months after her vaccination, and her two-year old daughter.

When first seen by the orthopedist, seventeen days post-vaccination, Petitioner reported right shoulder pain which first manifested as aching, then worsened for about 48 hours, and then improved. Exhibit 3 at 41. She rated it at a level of eight. *Id.* The orthopedist observed normal range of motion ("ROM"), opined that Petitioner was suffering from bursitis or irritation from the vaccine, and administered a cortisone injection. *Id.* at 44.

In her affidavit, Petitioner reported experiencing a two-day reaction to the injection which prevented her from working the next day. Exhibit 1 at ¶ 13. However, she acknowledged some pain relief for the three to four months following vaccination. *Id.* She also gave birth to her son in September 2018. *Id.* at ¶ 14.

When Petitioner next sought medical treatment on March 5, 2019, she reported a "limited response" to the cortisone injection, an increase in her symptoms over the winter, and current pain at a level of five. Exhibit 3 at 77. She was observed to have limited ROM. *Id.* at 78. An MRI, performed on March 15, 2019, revealed a low-grade partial-thickness tear of bursal surface of supraspinatus tendon, moderate tendinosis, and moderate bursitis and fluid in the bursa. Exhibit 16.

At her next orthopedic appointment, Petitioner described pain which throbbed at rest and increased to six to seven with movement. Exhibit 3 at 79. Due to the earlier reaction, a second cortisone injection was administered a few days later, right before the weekend. *Id.* at 79, 82.

[11] Unless otherwise noted, all pain levels discussed are based upon a scale of zero to ten.

At her initial PT session on March 26, 2019, Petitioner estimated that her current pain was three out of ten. Exhibit 4 at 20. She described difficulties holding her son and was observed to have decreased ROM. *Id.* at 19-20. During four additional sessions in April, Petitioner reported some slight improvement. *E.g., id.* at 13 (indicating on April 12, 2019 that "the throbbing has lessened"). However, at her last PT session on April 16, Petitioner reported "increased pain in the shoulder over the weekend." *Id.* at 11. When seen again by her orthopedist on April 30, Petitioner reported "no relief" after the second injection, distinguishing it from the first injection she received in July 2018 which "did provide relief." Exhibit 3 at 83. She estimated that her current pain was at a level of five. *Id.*

Petitioner did not pursue treatment again until late September 2019, when she began PT at a different clinic. At her initial visit, she reported milder symptoms, level one pain currently and while at rest which increased to a maximum of five with activity. Exhibit 5 at 5. Petitioner also exhibited improvement in her ROM. *Id.* at 6. By her fifth and last PT session on October 25, 2019, Petitioner's level of pain had decreased to one to two out of ten. She reported that she "[s]till feels the shoulder once in a while with certain movements . . . [and] [h]asn't had the sharp pains." *Id.* at 14.

In February 2020, three months after filing her petition, Ms. Hein returned to the orthopedist. She reported pain at a level of one and "some clicking and catching in her shoulder." Exhibit 22 at 12. She underwent an arthrogram MRI in early March 2020, which showed no tear but tendinosis and findings suggestive of impingement. Exhibit 20; Exhibit 22 at 14. She was administered a different type of injection at this visit. Exhibit 22 at 15.

This third injection provided additional relief, and Petitioner did not seek treatment again until July 2020. At that visit, she reported pain with movement which ranged from zero to six. Exhibit 18 at 7. Not seen again until October 23, 2020, Petitioner expressed frustration with her lack of progress. The orthopedist reassured her that a complete resolution of her injury would take time. Petitioner's level of pain was noted to be four. Exhibit 19 at 7.

Although the circumstances of the *George* and *Kim* cases share some similarities with the Petitioner in this case, those petitioners clearly suffered from symptoms which were less severe, and which lasted for a shorter duration. For example, the SIRVA suffered by the petitioner in *George* was described as mild and resolved within eight months of vaccination. *See George*, 2020 WL 4692451, at *2-3. Although her pain was often more severe, the *Kim* petitioner suffered this level of pain for only three months, and her SIRVA substantially resolved within seven months. *See Kim,* 2018 WL 3991022, at *7-8. Thus, while these cases are instructive, I find that the award for pain and suffering in this case should be higher.

The last case cited by Respondent, *Gentile,* provides a better comparison. However, in that case the special master awarded $85,000.00 for past pain and suffering, plus an additional future component. *See Gentile,* 2020 WL 3618909, at *14. Additionally, the *Gentile* petitioner simultaneously suffered from severe headaches due to an unrelated condition, delayed seeking treatment for two months, and had larger later gaps in treatment. *See id.* at *1-4.

Instead, I find the facts and circumstances in Ms. Hein's case more closely resembles those experienced by the petitioner in *Accetta*, who suffered similar fluctuations in her SIRVA symptoms over a period of more than five years. *See Accetta,* 2021 WL 1718202, at *3-5. Although the overall duration of the SIRVA suffered by the *Accetta* petitioner was documented to be almost twice as long as in this case, Ms. Hein experienced additional difficulties caused by her pregnancy and need to care for her newborn and toddler. Additionally, the petitioner in *Accetta* declined treatment on several occasions, while the Petitioner in this case pursued most treatments available to her. *See id.* at *4-5. Still, due to the longer duration of the *Accetta* petitioner's SIRVA, I find the amount awarded to Petitioner should be slightly lower. The amount of $93,000.00 is the appropriate compensation for Petitioner's past pain and suffering.

Although Petitioner does not seek an award for her *future* pain and suffering, I also have determined one is not warranted in this case. As I stated in *Accetta*, I find that an award for *future* pain and suffering is appropriate "only for cases where a strong showing is made that the claimant has suffered a permanent disability, or there are other extenuating circumstances that justify inclusion of a future component." *Accetta,* 2021 WL 1718202, at *5.

## V. Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $93,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**[12] **I also find that Petitioner is entitled to $1,263.28.00 in actual unreimbursable expenses.**

**I thus award Petitioner a lump sum payment of $94,263.28, representing $93,000.00 for her actual pain and suffering and $1,263.28 for her actual**

[12] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Human Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Human Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

**unreimburseable expenses in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The clerk of the court is directed to enter judgment in accordance with this decision.[13]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

[13] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.